# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ESTATE OF AMETIA CHATMON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:16-cv-02722 |
| ) | **CHIEF JUDGE CRENSHAW** |
| WARNER MUSIC GROUP CORP., et ) | |
| al., ) | |
| ) | |
| Defendants. | |

## MEMORANDUM OPINION

The Estate of Armetia Chatmon (the "Estate") filed this action against Eric Clapton, among others, alleging Clapton violated one of Chatmon's copyrights. (Doc. No. 90.) All defendants except Clapton have been voluntarily dismissed from this action. (Doc. Nos. 47; 116; 125; 137.) Now Clapton moves to dismiss the remaining claims for lack of personal jurisdiction. (Doc. No. 104.) For the following reasons, the motion to dismiss is granted.

### I.

The Estate alleges that it owns Chatmon's copyright in his musical composition called "Corrine, Corrina" ("The Original Song"). (Doc. No. 90 at 7.) In 1992, Clapton, a resident of England who owns property in Ohio (Id. at 6), recorded an episode of the "MTV Unplugged Series" in London, during which he performed The Original Song, which he called "Alberta, Alberta." (Id. at 10.) The recording aired that year on the television station "MTV." (Id.) Later that year, Clapton released his "Clapton Unplugged Album," featuring his Unplugged Performance of The Original Song, which sold millions of copies worldwide. (Id. at 11.) Clapton received six Grammy Awards for the album, including Record of the Year, Album of the Year, Song of the

Year, Best Male Pop Vocal Performance, Best Rock Male Vocal Performance, and Best Rock Song. (Id.)

In 2011, Clapton performed a derivative version of The Original Song with Wynton Marsalis at Lincoln Center. (Id. at 12.) Warner Music Group later released a recording of this derivative song called "Marsalis & Clapton play the blues." (Id.) In 2012, Universal Music Group released five editions of a remastered version of Clapton's 1977 album "Slowhand." Three of the five editions contain an unreleased recording of "Alberta," originally recorded in 1977, which allegedly infringed on Chatmon's copyright. (Id.) In 2013, Clapton's "Unplugged" album was remastered and rereleased as a "Deluxe Edition" by Warner Music, which also featured a remastered version of The Original Song. (Id. at 12-13.) It also included video footage of Clapton's 1992 Unplugged Performance on "MTV." (Id. at 13.) In 2014, Hal Leonard licensed sheet music and published it in the "Eric Clapton—Unplugged—Deluxe Edition Songbook," which sold in Tennessee and elsewhere. (Id.)

The Estate's attorney, Barry Shrum, filed a Declaration that sets forth five specific facts to prove Clapton's connection with Tennessee: (1) the 2013 re-release of Clapton's Unplugged album, containing the infringing song, is available for purchase at a store in Nashville; (2) the Unplugged Deluxe Edition album, containing the infringing song, is available for purchase in Brentwood, Tennessee; (3) Clapton's website sells and ships copies of albums containing the infringing song to Tennessee; (4) Clapton performed in Tennessee in 2013 and 2014, and each time albums containing the infringing song were "offered for sale to concert goers in the State of Tennessee"; and (5) Clapton likely had at least some control over the geographic distribution of his musical compositions. (Doc. No. 81-1 at 2.) He declares that he has knowledge of the first four items based on his "significant independent research with regard to Mr. Clapton and his contact

with, and targeted business in, the State of Tennessee." (Id.) He declares the fifth item is "standard practice in the music industry." (Id.)

II.

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to file a motion to dismiss for lack of personal jurisdiction. "In a diversity action, the law of the forum state dictates whether personal jurisdiction exists, subject to constitutional limitations." Intera Corp. v. Henderson, 428 F.3d 605, 615 (6th Cir. 2005). Tennessee's long-arm statute, Tennessee Code Annotated § 20–2–214, provides that a Tennessee court may exercise jurisdiction over an out-of-state defendant on "[a]ny basis not inconsistent with the constitution of this state or of the United States." Id. at (6). Accordingly, the long-arm statute has been consistently construed to extend to the limits of federal due process. Gordon v. Greenview Hosp., Inc., 300 S.W.3d 635, 645 (Tenn. 2009).

The Estate has the burden of showing personal jurisdiction but "that burden is 'relatively slight' where, as here, the . . . court rules without conducting an evidentiary hearing." MAG IAS Holdings, Inc. v. Schmuckle, 854 F.3d 894, 899 (6th Cir. 2017) (citing Air Prods. & Controls Inc. v. Safetech Int'l Inc., 503 F.3d 544, 549 (6th Cir. 2007) (quotation omitted)). "To defeat dismissal in this context, [the Estate] need make only a prima facie showing that personal jurisdiction exists." Id. Nevertheless, "[i]n response to a motion to dismiss, the plaintiff may not stand on his pleadings, but must show the specific facts demonstrating that the court has jurisdiction." Miller v. AXA Winterthur Ins. Co., 694 F.3d 675, 678 (6th Cir. 2012) (citing Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991)). Because the Court did not hold an evidentiary hearing, it may not weigh Clapton's Declaration (Doc. No. 80) in its analysis. Compuserve, Inc. v. Patterson, 89 F.3d 1257, 1263 (6th Cir. 1996) (citing Theunissen, 935 F.2d at 1459).

III.

Clapton argues that he does not have sufficient minimal contacts with the State of Tennessee to be subjected to suit in this Court. (Doc. No. 105.) The Estate counters that the Court has specific personal jurisdiction over Clapton. (Doc. No. 107.) Even if the Court did not have personal jurisdiction under traditional due process considerations, the Estate also contends that the Court has jurisdiction over this case under Federal Rule of Civil Procedure 4(k)(2).

A.

For a court to exercise specific jurisdiction over a defendant, the plaintiff must prove: (1) the defendant purposefully availed himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." S. Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968). The key question is whether the defendant purposefully availed himself. Air Prods. & Controls, Inc, 503 F.3d at 550-51. A defendant "purposefully avails" himself "by engaging in activity that should provide 'fair warning' that he may have to defend a lawsuit there." Youn v. Track, Inc., 324 F.3d 409, 418 (2003) (quoting World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

The Estate argues that Clapton purposefully availed himself of the privilege of acting in Tennessee by placing the infringing song in the stream of commerce, which ended up in Tennessee, and entering distribution agreements to ensure that the music would reach Tennessee.[1] (Doc. No.

---

[1] In its Response, the Estate does not argue that Clapton's website, referenced in Shrum's Declaration, is sufficient purposeful availment to Tennessee. (Doc. No. 107.) There is no evidence of how interactive that website is or whether it is directed at Tennessee (or the United States in general), so the Court does not consider the website when analyzing Clapton's contacts. See Bird v. Parsons, 289 F.3d 865, 874 (6th Cir. 2002) ("The operation of an Internet website can constitute the purposeful availment of the privilege of acting in a forum state under the first Mohasco factor 'if the website is interactive to a degree that reveals specifically intended interaction with residents of the state.'") (citing Neogen Corp., 282 F.3d at 890).

4

107.) Clapton argues that any allegation by the Estate regarding Clapton's control over where his records are sold is speculative. (Doc. No. 119 at 4.)

"[P]urposeful availment is something akin to a deliberate undertaking to do or cause an act or thing to be done in [the forum state] or conduct which can be properly regarded as a prime generating cause of the effects resulting in [the forum state], something more than a passive availment of [the forum state's] opportunities." Bridgeport Music, Inc. v. Still N The Water Pub., 327 F.3d 472, 478 (6th Cir. 2003) (quoting Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 891 (6th Cir. 2002)). The inquiry ensures that "a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" Id. (quoting Burger King Corp. v. Rudewicz, 471 U.S. 462, 475 (1985)). Purposeful availment is when the "defendant's contacts with the forum state proximately result from the actions by the defendant *himself* and create a substantial connection with the forum state, and when the defendant's connection with the forum are such that he should reasonably anticipate being haled into court there." Id. (quoting CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1263 (6th Cir. 1996)) (emphasis in original).

Here, both parties rely on the "stream of commerce plus" test announced by Justice O'Connor's plurality in Asahi Metal Industry Company, Ltd. v. Superior Court, 480 U.S. 102 (1987), and adopted by the Sixth Circuit in Still N The Water, 327 F.3d at 480. Under this test, "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." Still N The Water, 327 F.3d at 479 (quoting Asahi, 480 U.S. at 112). Clapton argues that the Estate's only basis for haling him into court in Tennessee is that his infringing song is sold in Tennessee. The Estate argues that Clapton

5

directs that the songs are sold in Tennessee, rather than just passively allowing his songs to be sold in Tennessee, which is sufficient for purposeful availment.

The Estate is correct that a nationwide distribution agreement would be sufficient to satisfy the "plus" part of the "stream of commerce plus" test. Still N The Water, 327 F.3d at 483-84. In Still N The Water, the defendant's president admitted in a deposition that there was a distribution agreement to sell the infringing recordings "in all 50 states." Id. at 484. The Sixth Circuit held that, by such agreement, the defendant purposefully availed itself of the privileges of doing business in Tennessee, and therefore it could be sued in Tennessee. Id.

The problem with the Estate's argument is that it has no proof, by affidavit or otherwise, that Clapton has such a distribution agreement. Instead, "[t]he Estate assumes . . . [Clapton] had and has at least partial control over the distribution of Unplugged Deluxe," which is sold in Tennessee. (Doc. No. 107 at 6.) The assumption, according to the Estate's counsel's Declaration, is based on the standard practice of the music industry. However, even accepting the Estate's Declaration and all assumptions that can accompany it, there is no allegation that Clapton himself exercised his control over the distribution of his album by entering into an agreement requiring Warner Music Group, which distributed Unplugged Deluxe, to sell the album in Tennessee. See Bridgeport Music, Inc. v. Agarita Music, Inc., 182 F. Supp. 2d 653, 665 (M.D. Tenn. 2002) (holding that a passive agreement allowing the distributor to sell the infringing album in Tennessee and then collecting royalties from those sales is insufficient for personal jurisdiction). In short, there are simply no allegations, in the Complaint or in counsel's Declaration, that would be sufficient to support a holding that Clapton purposefully availed himself of the privileges of doing business in Tennessee.

Because Clapton did not purposefully avail himself to Tennessee, the allegations in the Complaint do not arise from Clapton's business in Tennessee, and the limits of due process are not substantial enough to make exercising jurisdiction over Clapton reasonable. Tennessee's long arm statute therefore does not allow the Court to exercise jurisdiction over this action.

B.

As an alternative argument, the Estate argues that the Court can exercise jurisdiction over Clapton under Federal Rule of Civil Procedure 4(k)(2). (Doc. No. 107 at 8.) "Rule 4(k)(2) was adopted to provide a forum for federal claims in situations where a foreign defendant lacks substantial contacts with any single state but has sufficient contacts with the United States as a whole to satisfy due process standards and justify the application of federal law." Meriel Ltd. v. Cipla Ltd., 681 F.3d 1283, 1293-94 (Fed. Cir. 2012) (citing Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico, 563 F.3d 1285, 1295-96 (Fed. Cir. 2009)). Rule 4(k)(2) operates as "a federal long-arm statute, which allows a district court to exercise personal jurisdiction over a foreign defendant whose contacts with the United States, but not with the forum state, satisfy due process." Synthes, 563 F.3d at 1296.

For the Court to hear a dispute under Rule 4(k)(2), it must find "(1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to personal jurisdiction in the courts of any state, and (3) the exercise of jurisdiction satisfies due process requirements." Meriel, 681 F.3d at 1294 (citing Synthes, 563 F.3d at 1293-94). Here, the first two elements are satisfied. This dispute arises out of federal copyright law, 17 U.S.C. § 101 et seq. See Barrocos of Florida, Inc. v. Elmassian, No. 11-cv-22393, 2012 WL 1622988, at *6 n.2 (S.D. Fla. May 9, 2012) (finding that "several courts have applied Rule 4(k)(2) to claims arising under federal copyright law) (citations omitted). Second, although the Court had concerns regarding whether the defendant is subject to

the personal jurisdiction in Ohio because Clapton owns property in Ohio, the parties agree regarding general jurisdiction that the Ohio long-arm statute would not allow Clapton, as a non-resident, to be sued in that state. (Doc. No. 147); Conn v. Kakharov, 667 F.3d 705, 714 (6th Cir. 2012) (holding that a nonresident cannot be sued in Ohio even when he owns property in the state) (citing Prouse, Dash & Crouch, L.L.P. v. DiMarco, 876 N.E.2d 1226, 1228 (Ohio 2007)). Regarding specific jurisdiction, the Estate only avers that Unplugged Deluxe is in the stream of commerce in Ohio, which, as analyzed herein, is insufficient.[2] (Doc. No. 147 at 3); Still N The Water, 327 F.3d at 480. Therefore, this case turns on the third element: whether the exercise of jurisdiction satisfies due process requirements.

To establish whether due process permits the exercise of personal jurisdiction under Rule 4(k)(2), the plaintiff must satisfy the Mohasco test, but instead of using the defendant's contacts with the forum state, the plaintiff can use the defendant's contacts nationally. Touchcom, Inc. v. Bereskin & Parr, 574 F.3d 1403, 1416 (Fed. Cir. 2009) (quoting Synthes, 563 F.3d at 1297); see also See, Inc. v. Imago Eyewear Pty, Ltd., 167 F. App'x 518, 521 (6th Cir. 2006) (applying the Mohasco test using the defendant's national contacts). Neither side analyzes the purposeful availment question on a national level. Instead, the Estate just argues that "it's clear [Clapton] is subject to personal jurisdiction under the Mohasco test" because he "distributed or controlled distribution of musical compositions which infringed The Estate's copyrights throughout the United States." (Doc. No. 107 at 10.) Clapton, for his part, asserts that he did not purposefully avail himself to the United States "for the reasons discussed." (Doc. No. 119 at 5.)

---

[2] The facts relied upon by the Estate in the Joint Statement (Doc. No. 147) to support specific jurisdiction in Ohio are not in the Complaint or any Declaration or Affidavit, and therefore cannot be considered by the Court. See Theunissen, 935 F.2d at 1458 (holding that the plaintiff must set forth specific facts showing the court has jurisdiction "by affidavit or otherwise"); Weller v. Cromwell Oil Co., 504 F.2d 927, 930 (6th Cir. 1974) (holding that an "ambiguous affidavit in the disjunctive" does not set forth specific facts showing jurisdiction).

Again, there is no evidence of what Clapton's distribution agreements state, so the Court cannot make a finding thereon that Clapton intended to sell The Original Song in the United States. He may have directed the sale to certain areas of the United States, the United States generally, or left the decision on where to direct the sales to the discretion of Warner Music Group. However, unlike Clapton's connection to Tennessee, he actually performed the infringing song in the United States in 2011 at Lincoln Center. By performing the song in the United States, the Estate can establish the "stream of commerce plus" test. See Autodesk, Inc. v. Kobayashi + Zedda Architects Ltd., 191 F. Supp. 3d 1007, 1016 (N.D. Cal. 2016) (holding that the defendant expressly aimed its act at the forum state when it directed its copyright infringement at the forum state) (citing Adobe Sys. Inc. v. Childers, No. 5:10-cv-3571, 2011 WL 566812, at *3 (N.D. Cal. Feb. 14, 2011)). Clapton aimed his infringing acts at the United States, and therefore he purposefully availed himself of the laws of the United States.

The copyright infringement cause of action, however, does not arise from Clapton's performances in New York. (Doc. No. 90 at 14-19.) Instead, it only focuses on the Unplugged Deluxe album and online downloads. As discussed in detail above, there is simply no evidence that Clapton has any control in this case over where the sale of the Unplugged Deluxe album is sold or what his distribution agreements say. In fact, none of the causes of action refer to any of Clapton's purposeful availment. (Doc. No. 90 at 14-27.) "[T]here must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty., 137 S. Ct. 1773, 1781 (2017).

Clapton recorded the infringing song in England, third parties distributed his song, and there is no connection to the United States other than Plaintiff's counsel's assumption that the

distribution agreements may mention that the records are to be distributed in the United States. The Estate has not asked for discovery of those distribution agreements, and the Court is not required to sua sponte hold an evidentiary hearing or ask for those agreements. See Theunissen, 935 F.2d at 1465 (holding that the plaintiff's failure to ask for discovery three-and-a-half weeks prior to the district court's decision on personal jurisdiction did not require the district court to grant a request for discovery on the eve of that decision). The causes of action did not arise from Clapton's contacts with the United States, so the Court lacks personal jurisdiction over Clapton.

The Court will enter an appropriate order.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE